**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| Deckers Outdoor Corporation, | ) ) ) | CV 14-2307 RSWL (FFMx) |
| Plaintiff, | ) ) ) | **ORDER re: Plaintiff's Motion for Default Judgment [15]** |
| vs. | ) ) ) ) | |
| Ozwear Connection Pty Ltd., Alexander Adams, and Does 1-10, inclusive, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Currently before the Court is Plaintiff Deckers Outdoor Corporation's ("Deckers" or "Plaintiff") Motion for Default Judgment [15] against Defendants Ozwear Connection Pty Ltd. ("Ozwear") and Alexander Adams ("Adams") (collectively, "Defendants"), filed by Plaintiff on July 31, 2014.  Plaintiff moves for Default Judgment against Defendants as to the following claims: (1) Trademark Infringement in violation of 15 U.S.C. §§ 1114(1) and 1125(a); (2) Unfair Competition

and False Designation of Origin in violation of 15
U.S.C. § 1125(a); (3) Dilution of a Famous Mark in
violation of 15 U.S.C. § 1125(c); (4) "Cybersquatting"
in violation of 15 U.S.C. § 1125(d); and (5) two claims
of Patent Infringement in violation of 35 U.S.C. § 271.
Plaintiff requests as relief $4 million ($2 million per
defendant) in statutory damages pursuant to 15 U.S.C. §
1117(c)(2), a permanent injunction, and various orders.

The Motion was set for hearing on September 10,
2014, and was taken under submission by the Court on
September 4, 2014 [16].  The Court, having reviewed all
papers submitted pertaining to this Motion, **NOW FINDS
AND RULES AS FOLLOWS:**  The Court **GRANTS in part and
DENIES in part** Plaintiff's Motion for Default Judgment.

## I. BACKGROUND

Plaintiff Deckers is an American corporation that
designs, markets, and sells footwear and other
merchandise under its UGG® brand.  Compl. ¶¶ 6, 14-19.
Plaintiff owns the trademark "UGG," a valid and
incontestible trademark registered with the U.S. Patent
& Trademark Office (hereinafter referred to as the "UGG
Trademark").  Compl. ¶¶ 15-17.  Plaintiff and its
predecessors in interest have continuously used the UGG
trademark since at least 1979, and since acquiring the
UGG trademark and its business goodwill in 1995,
Plaintiff has continuously sold footwear, clothing, and
accessories under the UGG trademark.  Compl. ¶ 15, 16.
Plaintiff's UGG®-brand products are distributed and

sold to consumers throughout the United States,
including on the Internet through Plaintiff's website,
www.ugg.com.  Compl. ¶ 14.

Plaintiff also owns two United States design
patents, registered with the U.S. Patent & Trademark
Office as design patent No. D616,189 and No.D599,999.
Compl. ¶ 20-21.  Plaintiff has not granted to
Defendants any form of consent to use Plaintiff's
patents or the UGG Trademark.  Compl. ¶¶ 17, 22.

Defendant Ozwear is an Australian business that
sells products, including sheepskin footwear, that bear
a label that includes the "UGG" mark.  Compl. ¶ 7; Mot.
for Default J. ("Mot.") at 22-23, Decl. Of Robert L.
Holmes; id. at 28-46, Exs. A-D.  Ozwear owns or
operates the website ozwearuggs.com.au, through which
Ozwear sells its products to United States customers,
including customers in California.  Compl. ¶ 10-12.
Defendant Adams is an Australian citizen who is the
owner or agent of Ozwear and who, through the website
ozwearuggs.com.au, sells Ozwear products bearing the
"UGG" mark in the United States, including in
California.  Compl. ¶¶ 8-12; Mot. at 22-23, Holmes
Decl. ¶¶ 2-5; id. at 32-46, Exs. B-D.

Plaintiff alleges that Defendants Ozwear and Adams
have and continue to knowingly and willfully infringe
on Plaintiff's UGG Trademark by advertising,
manufacturing for sale, offering for sale, importing,
or selling counterfeit products bearing Plaintiff's UGG

Trademark in the United States through Defendants'
Internet website, ozwearuggs.com.au.  Compl. ¶¶ 12, 27-
36.  Plaintiff also alleges that Defendants, through
ozwearuggs.com.au, sell footwear in the United States
that infringes on the ornamental design protected in
two of Plaintiff's design patents, Patent No. D599,999
and Patent No. D616,189.  Compl. ¶¶ 25-26, 65-72, &
Exs. B-C.

Plaintiff filed this action against Defendants on
March 26, 2014 [1].  The Summons and Complaint were
served on Defendants on April 10, 2014.  Mot. at 4; id.
at 26, Wang Decl. ¶ 2.  Proofs of service for
Defendants were filed on May 7, 2014 [9].  On May 30,
2014, Plaintiff requested the Clerk to enter default
against Defendants [11].  The Clerk entered Defendants'
default on June 3, 2014 [13, 14].  On July 31, 2014,
Plaintiff filed this Motion for Default Judgment
against Defendants [15].  On July 31, 2014, Plaintiff
served Defendants with this Motion, Notice of Motion,
and supporting papers.  Mot. at 26-27, Wang Decl. ¶ 7.
To date, Defendants have not filed responsive pleadings
or otherwise appeared in this action.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the
entry of default judgment: "[w]hen a party against whom
a judgment for affirmative relief is sought has failed
to plead or otherwise defend . . ., the clerk must
enter the party's default."  Fed. R. Civ. P. 55(a).

After default is properly entered, a party seeking relief other than a sum certain must apply to the Court for a default judgment. See Fed. R. Civ. P. 55(b). A party moving for default judgment by the Court must satisfy both procedural and substantive requirements.

When application is made to the Court for default judgment, the application must comply with the procedural requirements in Federal Rules of Civil Procedure 55 and 56, and must comply with Local Rule 55-1. Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Substantively, the decision to grant or deny default judgment is within the discretion of the district court. Vogel, 992 F. Supp. 2d at 1005; see Fed. R. Civ. P. 55. The Ninth Circuit has established seven factors to assist the court in determining whether default judgment is substantively appropriate: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure that favors decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1472-73 (9th Cir. 1986). When analyzing whether entry of default

5

judgment is substantively proper, the factual allegations in the complaint are taken as true, as all factual allegations in the complaint, except those proving the amount of actual damages, are deemed admitted by the defaulting party once default has been properly entered against that party.  <u>Geddes v. United Financial Grp.</u>, 559 F.2d 557, 560 (9th Cir. 1977); <u>see</u> Fed. R. Civ. P. 8(b)(6).

Additionally, "[w]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir.1999).  When assessing whether jurisdiction is proper, "a court must also determine whether the service of process on the party against whom default judgment is requested is adequate." <u>DFSB Kollective Co. v. Tran</u>, No. 11-CV-01049-LHK, 2011 WL 6730678, at *6 (N.D. Cal. Dec. 21, 2011).

### III. ANALYSIS

**A.   <u>Subject Matter and Personal Jurisdiction</u>**

1.   <u>Subject Matter Jurisdiction</u>

The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1338, 15 U.S.C. § 1121, and 28 U.S.C. § 1331.

2.   <u>Personal Jurisdiction</u>

For a district court to properly exercise personal jurisdiction over a nonresident defendant, the forum

state's laws must provide a basis for exercising personal jurisdiction, and the assertion of personal jurisdiction must comport with due process. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073-74 (9th Cir. 2011).

The California long-arm statute permits the exercise of jurisdiction "on any basis not inconsistent with the Constitution . . . of the United States." Cal. Civ. Proc. Code § 410.10.  This language renders California's long-arm statute "coextensive with federal due process requirements" so that only a due-process analysis is required.  See CollegeSource, 653 F.3d at 1073 (citation omitted).

Due process requires a nonresident defendant to have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The defendant's contacts must be "such that the [defendant] should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

As both Defendants are "nonresidents" of California, Compl. ¶¶ 7-10, Plaintiff must show that Defendants have sufficient contacts with California to justify personal jurisdiction.  Sufficient contacts can be established by proving either general or specific personal jurisdiction.  Id.

### a.   Specific Personal Jurisdiction

A district court may assert specific personal jurisdiction over a defendant if the defendant has "purposefully directed" his activities at the forum and if the plaintiff's alleged claims and injuries "arise out of or relate to those activities." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472-73 (1985).

The Ninth Circuit applies a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant comports with due process:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

<u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1016 (9th Cir. 2008).   The plaintiff bears the burden of establishing the first two prongs.   <u>Id.</u>   If the plaintiff establishes both prongs, the defendant then bears the burden of making a "compelling case" that the exercise

of jurisdiction would not be reasonable.  _Id._

The Court finds that it has specific personal jurisdiction over Defendants.  Plaintiff has made a prima facie showing that Defendants have purposefully directed their activities at residents in this forum state and that Plaintiff's claims and injuries "arise out of or relate to" Defendants' infringing activities in this forum.  _Burger King Corp. v. Rudzewicz_, 471 U.S. 462, 472-73 (1985).  Plaintiff has alleged facts, deemed admitted by Defendants' default, _Derek Andrew, Inc. v. Poof Apparel Corp._, 528 F.3d 696, 702 (9th Cir. 2008), that Defendants sell and ship infringing products to California residents through Defendants' website, ozwearuggs.com.au, and that such infringing products are the subject of Plaintiff's claims and injuries in this Action.  Though Defendants' have the burden of establishing unreasonableness, the Court finds that its exercise of personal jurisdiction over Defendants is not unreasonable after _sua sponte_ assessing the Ninth Circuit's seven "reasonableness" factors.  _See Schwarzenegger v. Fred Martin Motor Co._, 374 F.3d 797, 801-02 (9th Cir. 2004).

**B.**  **Service of Process**

Defendants are both residents of New South Wales, Australia; Defendant Adams is an individual, and Defendant Ozwear is a business.  Compl. ¶¶ 8, 10; Mot. at 23, Holmes Decl.  Plaintiff's proofs of service indicate that Defendants were personally served by an

9

Australian private process server named Joseph Khoury from Clark International Pty. Ltd. in Caringbah, New South Wales, Australia.  Dckt. # 9, 10.

Rule 4 of the Federal Rules of Civil Procedure governs service of process, and subsection (f) allows a foreign individual to be served by "any internationally agreed means of service," such as the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Service Convention").  Fed. R. Civ. P. 4(f)(1).  Subsection (h)(2) allows service on a foreign corporation "in any manner prescribed by Rule 4(f) for serving an individual, except personal service under (f)(2)(C)(I)."  Fed. R. Civ. P. 4(h)(2).

Because the United States and Australia are parties to the Hague Service Convention, "compliance with the Convention is mandatory." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1099); see Private International Law: Serving a Legal Document Across International Borders, Australian Gov. Attorney-General's Dep't, http://www.ag.gov.au/Internationalrelations/PrivateInternationalLaw/Pages/Servingalegaldocumentacrossinternationalborders.aspx (last visited Sept. 16, 2014).  The Hague Service Convention allows for personal service of both defendants so long as the "State of destination does not object."  Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, art. 10 20 U.S.T. 361 (1956).  With regard to Article 10 of the

10

Convention, Australia allows for personal service of process and "does not object to the use of private process servers, diplomatic channels or local agents." <u>Private International Law: Serving a Legal Document Across International Borders</u>, Australian Gov., Attorney-General's Dep't http://www.ag.gov.au/Internationalrelations/PrivateInternationalLaw/Pages/Servingalegaldocumentacrossinternationalborders.aspx (last visited Sept. 16, 2014). More specifically, the rules of civil procedure of New South Wales allow for personal service of process by private process servers for both individuals and businesses. <u>See</u> New S. Wales, Unif. Civ. P. R. 10.5, 10.9, 10.10(2)(a), 10.11, 10.22 (2005), <u>available at</u> http://www.austlii.edu.au/au/legis/nsw/consol_reg/ucpr2005305/index.html; <u>see also</u> <u>DFSB Kollective Co. v. Tran</u>, No. 11-CV-01049-LHK, 2011 WL 6730678, at *6 (N.D. Cal. Dec. 21, 2011); <u>see also</u> <u>Declarations of Australia</u>, Hague Conference on Private Int'l Law, http://www.hcch.net/index_en.php?act=status.comment&csid=1062&disp=resdn (last visited Sept. 17, 2014).

Because Plaintiff's personal method of service complies with the Hague Service Convention, it complies with Fed. R. Civ. P. 4(f)(1). Plaintiff's proper service of Defendant Ozwear under Fed. R. Civ. P. 4(f)(1) complies with Fed. R. Civ. P. 4(h)(2). Plaintiff's service on Defendants was proper.

**C.   Procedural Requirements**

1   The Clerk properly entered Defendants' default on
2   June 3, 2014, and to date, Defendants have not
3   responded or appeared in this Action.   Upon reviewing
4   Plaintiff's Motion, the Court finds that Plaintiff has
5   satisfied the applicable procedural requirements for
6   entry of default judgment.
7   **D.   Substantive Factors**
8   The Court finds that, on the whole, the <u>Eitel</u>
9   factors weigh in favor of entry of default judgment as
10  to all of the claims that Plaintiff submitted for
11  default judgment except for Plaintiff's Cybersquatting
12  claim under 15 U.S.C. § 1125(d).
13                  *1. Prejudice to Plaintiff*
14  Plaintiff has established that it will suffer prejudice
15  if a default judgment is not entered.   <u>See *Vogel*</u>, 992
16  F. Supp. 2d at 1007; Compl. ¶ 35-39.   Plaintiff claims
17  it has suffered and will continue to suffer injury from
18  Defendants' alleged infringement of Plaintiff's UGG
19  Trademark and design patents.   <u>See</u> Compl. ¶¶ 35-39.   If
20  the Court declined to grant default judgment in this
21  case, Plaintiff would be prejudiced because Plaintiff
22  lacks other recourse to recover damages for its injury
23  or means to prevent the defendant from causing further
24  harm.   <u>Moroccanoil, Inc. v. Allstate Beauty Prods.,</u>
25  <u>Inc.</u>, 847 F. Supp. 2d 1197, 1201 (C.D. Cal. 2012).
26  This factor favors default judgment.
27      *2. & 3. Merits of Substantive Claim & Sufficiency of*
28                          *Complaint*

12

Lanham Act Claims

1. Trademark Infringement & Unfair Competition/False
Designation of Origin Claims

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a plaintiff must show: (1) it owns the trademark at issue; (2) the defendant has used in commerce without authorization, "any reproduction, counterfeit, copy, or colorable imitation" of the plaintiff's registered mark in connection with the sale, offering for sale, distribution, or advertising of goods; and (3) the defendant's use of the mark is "likely to cause confusion, or to cause mistake, or to deceive." See 15 U.S.C. § 1141(1)(a)-(b).

To prevail on a claim under § 1125(a) (use of counterfeit mark, unfair competition, false designation of origin), Plaintiff must show that Defendants, "in connection with any goods or services, or any container for goods, use in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

13

When analyzing a claim under sections 1114(1) and 11125(a), the same standard applies for both claims: "that [the defendant] is using a mark confusingly similar to [the plaintiff's] valid, protectable trademark."  Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1046 & n.6, 1047 n.8 (9th Cir. 1999).

Plaintiff has sufficiently pleaded facts to show that Defendants have used, and are using, a mark confusingly similar to Plaintiff's valid UGG Trademark. First, Plaintiff's Complaint asserts that Plaintiff owns the UGG Trademark, registered as U.S. Trademark Registration No. 3,050,925, and that the mark is valid and incontestible.  Compl. ¶ 16, Ex. A.  Plaintiff alleges that Defendants' use of the UGG mark is unauthorized.  Compl. ¶¶ 30-32.  Plaintiff shows that the UGG mark used by Defendants is a "reproduction, counterfeit, copy, or colorable imitation" of the UGG Trademark by providing images of Defendants' UGG mark, which looks nearly identical to the UGG Trademark Plaintiff registered with the Patent and Trademark Office.  Compl. ¶ 25; id. at 20, Ex. A.  Plaintiff sufficiently alleges and shows that Defendants use the mark "in commerce."  Compl. ¶¶ 22-25, 28-36; Mot. at Exh. D.

As to the final requirement, "likelihood of confusion," Plaintiff alleges that Defendants' use of the UGG mark creates a "likelihood of confusion"

because Defendants' UGG mark is "identical with or substantially indistinguishable from the [Plaintiff's] UGG mark" and is placed on merchandise that looks like merchandise sold by Deckers' UGG brand. <u>See</u> Compl. ¶¶ 23, 30.

"Likelihood of confusion" is the "central element" of a trademark infringement claim. <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 2020 F.3d 1199, 1205 (9th Cir. 2000). The "likelihood of confusion" issue "can be recast as the determination of whether the similarity of the marks is likely to confuse customers about the source of the products." <u>Id.</u> (internal quotation marks and citations omitted). The Ninth Circuit considers eight factors, termed the <u>Sleekcraft</u> factors, to determine likelihood of confusion: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341 (9th Cir. 1979). When infringement is alleged to have occurred via a website, the three most important factors are the similarity of the marks, the proximity (or relatedness) of the goods or services, and the simultaneous use of the Web as a marketing channel. <u>GoTo.com</u>, 202 F.3d at 1205. Upon considering the <u>Sleekcraft</u> factors, the

15

Court finds that Plaintiffs have established "likelihood of confusion."

The first factor requires a showing that the mark at issue is strong enough to be entitled to the protection of trademark laws.  Because Plaintiff's UGG Trademark is a federally registered trademark, Plaintiff is entitled to a presumption that the UGG Trademark is protected under the Lanham Act.  <u>UGG Holdings, Inc. v. Severn</u>, No. 04-1137, 2005 WL 5887187, at *3 (C.D. Cal. 2005) ("The federal registration of a trademark with the USPTO constitutes 'prima facie evidence of the validity of the registered mark, ownership of the mark and of the registrant's exclusive right to use the registered mark.'" (citing 15 U.S.C. §§ 1057(b), 1115(a); <u>Brookfield</u>, 174 F.3d at 1046–47)).  Defendants have not rebutted the presumption.  <u>See Tie Tech, Inc. v. Kinedyne Corp.</u>, 296 F.3d 778, 783 (9th Cir. 2002).

The second factor considers whether the relatedness of the goods bearing the contested mark is likely to cause consumer confusion.  "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." <u>Brookfield</u>, 174 F.3d at 1055.  Plaintiff has sufficiently shown that Plaintiff and Defendants manufacture, advertise, or sell related goods.  <u>See</u> Mot. at 6.  Plaintiff's images of its own patented designs and Defendants' footwear establish that the goods sold by Plaintiff and

16

Defendants are not only related, but look almost identical. Compl. ¶ 25, Exs. B-C; Mot. at Exs. A, D, F.  Further, both Plaintiff and Defendants sell other merchandise and "accessories," like hats and gloves made of sheepskin or sheepskin-like material, that look similar. See Compl. ¶¶ 15, 23, 56. Compare www.ozwearuggs.com.au/collections/accessories (Defendants' website), with www.ugg.com/womens-accessories (Plaintiff's website).  This factor weighs in favor of a likelihood of confusion.

The third factor considers the similarity of the marks at issue.  Plaintiff alleges that "[a] comparison of the marks on Defendants' products to Deckers' [UGG Trademark] reveals identical copying." Mot. at 6.  The similarity of Plaintiff's UGG Trademark and the UGG mark used by Defendants is immediately apparent upon viewing the two marks: both marks display the letters "UGG" in all caps, centered, and prominent in a large font; both marks are black in color; both marks are in very similar font; both marks are placed in the same location—the lower back side of the footwear, near the heel area; and Defendants' product label includes the word "Australian" in smaller font below, which is similar to the way Deckers' UGG-brand marketing appears.  Compl. ¶ 25, Ex. A; Mot. at Exs. A, D, E; see GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206 (9th Cir. 2000).  Because the two marks are "similar in terms of sight, sound, and meaning by examining the

actual situations in which consumers are likely to read, hear, and consider the meaning of the terms," this factor weighs in favor of likelihood of confusion. Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137 (9th Cir. 2011).

The fourth factor looks for evidence of actual confusion in the marketplace. Plaintiff asserts that mere purchases made by consumers of Defendants' products bearing the UGG mark "evidences actual confusion as to their source and origin." Mot. at 6-7; see Compl. ¶¶ 23, 25, 31, 33, 36. This conclusory statement is not sufficient to show actual confusion. But due to "the difficulty of garnering such evidence, the failure to prove instances of actual confusion is not dispositive," and the factor is heavily weighed only when the particular circumstances of the case indicate that such evidence should have been available and proven. Brookfield, 174 F.3d at 1050. In this case, because Defendants have placed the "UGG" mark on products that look very similar to Plaintiff's products, and because Plaintiff was unable to engage in discovery due to Defendants' default, a lack of evidence of actual confusion is not dispositive.

The fifth factor considers whether both plaintiff and defendant use the same "marketing channels" for the products at issue, as "[c]onvergent marketing channels increase the likelihood of confusion." M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1083 (9th Cir.

2005) (internal quotation marks and citations omitted). "[T]he Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since . . . it allows for competing marks to be encountered at the same time, on the same screen." GoTo.com, 202 F.3d at 1207. Both Plaintiff and Defendants use the Internet and their respective websites as marketing channels for their UGG-labeled products that are similar in appearance and features. Compl. ¶¶ 14, 23, 25, Exs. B, C. Because there is "significant overlap in [Plaintiff's and Defendants'] advertising markets," this factor weighs in favor of a likelihood of confusion. M2 Software, 421 F.3d at 1083.

The sixth factor looks at the degree of care with which a purchaser would choose the type of good at issue. "Low consumer care . . . increases the likelihood of confusion." Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1152 (9 th Cir. 2011). Plaintiff's Motion shows that Defendants sell some of their UGG-marked footwear for fairly high prices, around $250 to $300 per pair of boots. Mot. at 32-33, Ex. B. The higher the price of a product, the more it can be assumed that a purchaser will exercise a greater degree of care, which decreases the likelihood of confusion. Brookfield, 174 F.3d at 1060. Because of the arguably high price of the footwear and the greater sophistication of Internet purchasers today, GoTo.com, 202 F.3d at 1209, this factor weighs slightly

against a finding of a likelihood of confusion.

The seventh factor considers the defendant's intent in selecting the mark at issue. "This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." Brookfield, 174 F.3d at 1059. Plaintiff alleges that Defendants used the UGG mark willfully, with actual knowledge of Deckers' ownership of the UGG Trademark. Compl. ¶¶ 23, 34, 62. This factor favors a likelihood of confusion.

The eighth factor, likelihood of expansion of product lines, is "relatively unimportant where two companies already compete to a significant extent." Brookfield, 174 F.3d at 1060. Plaintiff asserts that it is already using the UGG Trademark in the class of goods exploited by Defendants so that the intention to expand product lines is irrelevant. Mot. at 7. Because both Plaintiff and Defendant are selling the same type of products with very similar features, this factor is not relevant and thus does not weigh against a finding of a likelihood of confusion.

The Sleekcraft factors, on the whole, support a finding of a likelihood of confusion.

2. Dilution of a Famous Mark Claim

To prevail on a claim for dilution of a famous mark under § 1125(c), Plaintiff must show that Defendants' use of its UGG mark is likely to cause dilution of a famous mark through blurring or tarnishment. 15 U.S.C.

§ 1125(c).  Plaintiff has alleged sufficient facts to establish that its UGG mark is "famous" under 15 U.S.C. 1125(c) and that Defendants are liable for dilution by both blurring and tarnishment. <u>See</u> Compl. ¶¶ 43-44, 48, 57, 62; Mot. at 24-25, Young Decl.

### 3. Cybersquatting

To prevail on a claim for cybersquatting under 15 U.S.C. § 1125(d), Plaintiff must show that 1) Defendants have or had a "bad faith intent to profit from that mark" and 2) "registers, traffics in, or uses a domain name that" is identical or confusingly similar to a mark that was "distinctive" or "famous" at the time of registration of the domain name, or causes dilution of a mark that was famous at the time of the domain name's registration.  15 U.S.C. § 1125(d)(1)(A).

Plaintiffs allege that Defendants used the UGG Trademark with a bad faith intent to profit from that trademark by claiming that Defendants knowingly and willfully placed the UGG Trademark in the domain names of Defendants' two websites ("ozwearuggs.com" and "ozwearuggs.com.au"), which sell products similar to those sold by Deckers, in order to benefit from the goodwill associated with the UGG Trademark.  Compl. ¶ 62.  Plaintiff alleges that its UGG Trademark was famous "before and at the time of the registration of Defendants' domain names."  Compl. ¶ 61.

An important question in this case is whether using the term "uggs" is "confusingly similar to" or

"dilutes" the UGG trademark.  Defendants use the term "uggs" in their domain names, not the Plaintiff's trademark, "UGG."  The word "uggs" is a term for a type of sheepskin boot, while Deckers' registered trademark, "UGG," is not a generic product term.[1]  <u>See</u> Andrew Terry & Heather Forrest, <u>Where's the Beef? Why Burger King Is Hungry Jack's in Australia and Other Complications in Building a Global Franchise Brand</u>, 28 Nw. J. Int'l L. & Bus. 171, 189 (2008).

In most cases, merely adding an "s" to the end of an otherwise distinctive trademark still creates a "confusingly similar" mark (e.g., "nationalgeographics.com" is confusingly similar to nationalgeographic.com).  But where adding an "s" turns the mark into a generic product name that would not be protected under the Lanham Act,[2] the likelihood of

_____

[1]  For example, no one asks for an "ugg," but a customer may be looking for "uggs" or "ugg boots."  <u>See</u> Terry & Forrest, <u>Where's the Beef?</u>, 28 Nw. J. Int'l L. & Bus. at 189.

[2]  <u>Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.</u>, 419 F.3d 925, 927 (9th Cir. 2005) ("Generic marks are not capable of receiving protection because they identify the product, rather than the product's source." (internal quotation marks and

confusion is significantly diminished.[3]  For instance, if the trademark was "CHIP" plastics, the word "chips" in a domain name would not necessarily be "confusingly similar" to the trademark "CHIP."  The key word in the analysis is "confusingly."

The fact that Defendants include "ozwear" in their domain names further undermines Plaintiff's claim of *confusing* similarity.  By including "ozwear" in the domain names, confusion is diminished, if not eradicated: a consumer is expressly put on notice that this is not a Deckers UGG-brand website.  After

_____

citations omitted)).

[3]  An additional consideration is that First Amendment issues could be triggered if a person is enjoined from using a generic product term in his domain name.  Cf., e.g., <u>Toyota Motor Sales, U.S.A., Inc. v. Tabari</u>, 610 F.3d 1171, 1176 (9th Cir. 2010) (reviewing a permanent injunction in a trademark infringement case that prohibited the mark "LEXUS" in any domain name of the defendant's and holding that the injunction was too broad under the First Amendment because it prohibited domain names "that on their face dispel any confusion as to sponsorship or endorsement").

reviewing Plaintiff's allegations, the Court finds that Plaintiff does not allege sufficient facts to show that Defendants' use of the term "uggs" in Defendants' domain names is "confusingly similar" to Plaintiff's UGG Trademark.  Plaintiff also does not allege sufficient facts to show that the term "uggs" in Defendants' domain names dilutes Plaintiff's famous UGG mark.  <u>See</u> 15 U.S.C. § 1125(c).

Thus, the Court finds that Plaintiff has failed to allege sufficient facts to establish Defendants' liability for cybersquatting under 15 U.S.C. § 1125(d).

<u>Patent Infringement Claims</u>

Patent infringement is defined in 35 U.S.C. § 271(a): "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

Plaintiff alleges infringement of two design patents.  <u>See</u> Compl. at Ex. B-C.  A design patent is infringed if "the patented design, or any colorable imitation thereof," is applied to "any article of manufacture for the purpose of sale."  35 U.S.C. § 289; <u>see also McIntire v. Sunrise Specialty Co.</u>, 944 F.Supp.2d 933, 937 (E.D. Cal. 2013) (citing <u>Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.</u>, 501 F.3d 1314, 1319 (Fed. Cir. 2007).  To satisfy Section 289, the plaintiff must allege facts sufficient for a fact-

finder to conclude that "an ordinary observer familiar with the patented product would be deceived into believing that the accused product is the same as the patented design."  Amini Innovation Corp. v. KTY Int'l Mktg., 768 F. Supp. 2d 1049, 1055 (C.D. Cal. 2011) (citing Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 681 (Fed. Cir. 2008)).

Plaintiff's patents are "presumed valid" under 35 U.S.C. § 282, as Defendants have not challenged the patents' validity.  Plaintiff provides images of its patented designs and photographs of the footwear sold by Defendants through ozwearuggs.com.au to show the similarity of Defendants' and Plaintiff's designs. Compl. at Exs. B-C; Mot. at Exs. A, D, E-F.  Both Defendants' and Plaintiff's products have similar, if not identical, ornamental designs consisting of a side slit in the material on the outward side of the upper portion of the boot with fur protruding from the slit and with the slit fastened together by buttons hooked to a band that is attached to the opposite side of the slit.  See id.  Plaintiff's images are sufficient for a fact-finder to conclude that an ordinary observer familiar with Plaintiff's patented product would be deceived into believing that the Defendants' product is the same as the patented design.  See Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 681 (Fed. Cir. 2008)).  Plaintiff has alleged sufficient facts to prove Defendants' liability for patent infringement.

While Plaintiff has failed to prove its cybersquatting claim under 15 U.S.C. § 1125(d), it has proved the majority of its claims, including trademark infringement, dilution of a famous mark, and patent infringement of two design patents. Thus, this factor weighs in favor of default judgment as to the claims sufficiently proved by Plaintiff.

### 4. Sum of Money at Stake in Action

Default judgment is disfavored when a large amount of money is involved and is unreasonable in light of the potential loss caused by the defendant's actions. Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). Here, Plaintiff seeks a large amount of money—$4 million in statutory damages. But a large amount of money, by itself, is not necessarily unreasonable; the court must balance "the amount of money at stake in relation to the seriousness of the defendant's conduct." Vogel, 992 F. Supp. 2d at 1012 (internal quotation marks, alterations, and citations omitted). Because Plaintiff is requesting statutory damages, the Court has discretion to award a damages amount it deems just. 15 U.S.C. § 1117(c)(2). Thus, despite Plaintiff's request for $4 million, the Court's authority to determine the amount of damages ensures that the award will correspond to "the seriousness of the defendant's conduct." See IO Grp., Inc. v. Jordon, 708 F. Supp. 2d 989, 999 (N.D. Cal. 2010). This factor

does not weigh against default judgment.

### 5. Disputed Material Facts

Because Defendants have failed to respond or appear in this action, there is no possibility of a dispute concerning material facts, as all facts alleged in the Complaint, except those relating to the amount of actual damages, are deemed admitted once default has been entered against a party. Geddes v. United Financial Grp., 559 F.2d 557, 560 (9th Cir. 1977); see Fed. R. Civ. P. 8(b)(6). This factor weighs in favor of default judgment.

### 6. Excusable Neglect

There is no indication that Defendants have defaulted due to excusable neglect. Plaintiff served Defendants properly and has also provided Defendants with a copy of its Motion for Default Judgment; to date, Defendants have not appeared. See, e.g., Moroccanoil, 847 F. Supp. 2d at 1202. This factor weighs in favor of default judgment.

### 7. Policy Favoring Decisions on the Merits

While cases "should be decided upon their merits whenever reasonably possible," Eitel, 782 F.2d at 1472, when a party, like Defendants, has failed to appear or respond in an action, default judgment may be the only just manner to remedy a violation of rights, see Moroccanoil, 847 F. Supp. 2d at 1203. This factor does not weigh against default judgment.

Balancing the Eitel factors, the Court finds that

the factors weigh almost uniformly in favor of default judgment and, thus, that default judgment is proper as to all of Plaintiff's claims submitted for default judgment except for Plaintiff's cybersquatting claim under 15 U.S.C. § 1125(d).

### D.   Requested Relief

#### 1.   Statutory Damages

The court has "wide latitude" and discretion in determining the amount of damages and other relief to award upon default judgment,[4] especially when a plaintiff elects statutory damages.  Elektra Entm't Grp. Inc. v. Crawford, 226 F.R.D. 388, 394 (C.D. Cal. 2005)).  Plaintiff requests $4 million in statutory damages, specifically $2 million "per defendant," pursuant to 15 U.S.C. 1117(c)(2).  Mot. at i.  Section 1117(c)(2) states that when a plaintiff proves "the use

---

[4] Monetary damages are appropriate in a default judgment if the amount is a liquidated sum or capable of mathematical calculation, such as when statutory damages are elected; in such a case, the actual amount of monetary damages do not need to be "proved up" at an evidentiary hearing.  HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 947-48 (D. Ariz. 2013) (citing Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir. 1981)).

of a counterfeit mark[5] . . . in connection with the sale, offering for sale, or distribution of goods or services," the plaintiff may elect to recovery statutory damages rather than actual damages.  15 U.S.C. § 1117(c).  Subsection (2) states that "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(2).  Because Plaintiff sufficiently alleged Defendants' "use of a counterfeit mark" and that such use by Defendants was willful, Plaintiff is entitled to elect statutory damages pursuant to 15 U.S.C. § 1117(c)(2).

### a. "Per Defendant" Request

Plaintiff requests $2 million "per defendant" for Defendants' trademark infringement.  Mot. at 15. Because the two defendants in this case are acting

---

[5]  ". . . the term "counterfeit mark" means– (i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered . . . ."  15 U.S.C. § 1116(d)(1)(B)(i).

effectively as a single entity, the Court, in its discretion, will not award a statutory damage award "per defendant." <u>See, e.g.</u>, <u>Carpet Crops, Inc. v. Carpet Crops, LLC</u>, No. 11-00561, 2012 WL 3929783, at *1, *7 (D. Nev. Sept. 6, 2012) (refusing to award statutory damages "per defendant" under 15 U.S.C. § 1117(c) when the two defendants were a corporation and an individual who ran the corporation; instead, the court awarded statutory damages only per infringing mark according to the language of Section 1117).

    *b. Appropriate Statutory Damages Amount*

  Neither the Lanham Act nor clear precedent provides guidelines for courts to use when determining an appropriate award of statutory damages for trademark infringement. <u>Wine Grp., LLC. v. USA Cal. Fengshiya Wine Grp., Ltd.</u>, No. 11-0421, 2011 WL 3189361, at *3 (C.D. Cal. July 26, 2011). For guidance, district courts have looked to copyright infringement cases that awarded statutory damages under the Copyright Act, which contains similar statutory damages provisions with similar legislative purposes as those in the Lanham Act.[6]

---

  [6] "[C]ourts faced with determining statutory damages under the Lanham Act have often been guided by the body of case law developed to interpret the similar statutory damage provision in the Copyright Act, 17

In the context of copyright infringement, the U.S. Supreme Court noted that awarding mere "restitution of profit and reparation of injury" would "fall short of an effective sanction for enforcement of the copyright policy" and that deterrence of future infringement and related wrongful conduct was a proper purpose for a damages award, "[e]ven for uninjurious and unprofitable invasions of copyright." <u>F.W. Woolworth Co. v. Contemporary Arts</u>, 344 U.S. 228, 233 (1990).  In light of <u>Woolworth</u>, the Ninth Circuit has held that the amount of a statutory damages award under the Copyright Act need not resemble the amount of the plaintiff's actual damages; for instance, in <u>Pausa</u>, the Ninth Circuit, acknowledging both the discretion of the trial court and the policy of deterrence, upheld an award of the maximum allowable statutory damages under the Copyright Act even though the plaintiff had only suffered nominal damages.  <u>Peer Int'l Corp. v. Pausa Records, Inc.</u>, 909 F.2d 1332, 1336-37 (9th Cir. 1990).

Plaintiff has sufficiently alleged that Defendants willfully and knowingly used the UGG counterfeit mark

U.S.C. § 504(c)."  <u>Phillip Morris USA Inc. v. Shalabi</u>, 352 F. Supp. 2d 1067, 1075 (C.D. Cal 2004); <u>see also Microsoft Corp. v. Nop</u>, 549 F. Supp. 2d 1233, 1237 (E.D. Cal. 2008)(listing seven factors).

on counterfeit footwear that was sold in the United States through Defendants' website.  Such intentional and knowing infringement justifies a high award of damages to deter Defendants and others, see Woolworth, 344 U.S. at 233, and to compensate Plaintiff for damages it could not discover due to Defendants' failure to appear or respond in this action, see Castworld, 219 F.R.D. 494, 501-02 (C.D. Cal. 2003). Such wrongful conduct by Defendants, combined with Defendants' failure to dispute Plaintiff's requested damages amount, persuades the Court that a high damage award within statutory bounds is reasonable and just. Thus, as Plaintiff has alleged one counterfeit mark, the "UGG" mark, and at least one type of goods, footwear, a maximum statutory damages award of $2 million under 15 U.S.C. § 1117(c)(2) is appropriate in this case.

### 2.   Injunctive Relief

Plaintiff seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116(a) and 35 U.S.C. § 283. Compl. ¶¶ 39, 52, 59, 67, 71; Mot. at 1.  This Court has statutory authority to grant such relief in its discretion.  15 U.S.C. § 1116(a); 35 U.S.C. § 283.

The Supreme Court requires that, before a district court grants a permanent injunction, the movant must satisfy a four-factor test by showing: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that,
considering the balance of hardships between the
plaintiff and defendant, a remedy in equity is
warranted; and (4) that the public interest would not
be disserved by a permanent injunction." eBay, Inc. v.
MercExchange, LLC, 547 U.S. 388, 391 (2006); see also
Amini Innovation Corp. v. KTY Int'l Mktg., 768 F. Supp.
2d 1049 (C.D. Cal. 2011).

*1. & 2. Irreparable Harm & Inadequacy of Legal Remedies*

Actual irreparable harm must be demonstrated to
obtain a permanent injunction. Herb Reed Enters., LLC
v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1249 (9th
Cir. 2013). Plaintiff must show that "remedies at law,
such as monetary damages, are inadequate to compensate
for the injury" arising from Defendants' infringement.
*Id.* at 1249-50. Plaintiff has sufficiently alleged
that it has suffered irreparable injury to its business
goodwill and reputation due to Defendants' infringing
activities and that, even after receiving a statutory
damages award, Plaintiff's injury will not be fully
remedied by a monetary award because its injury is hard
to compute and Defendants will continue their
infringing activity if not enjoined by the Court. See
Mot. at 11-12; Compl. ¶ 25, 29; Mot. at 25, Young Decl.

*3. Balance of the Hardships*

Balancing the hardships involves considering the
"relative effect of granting or denying an injunction
on the parties." i4i Ltd. v. Microsoft Corp., 598 F.3d

33

831 (Fed. Cir. 2010).  Plaintiff will be harmed by continued infringement of its design patents and UGG Trademark.  Defendants, on the other hand, are engaged in willful and knowing infringement and face no hardship in permanently refraining from their infringing activity.  There is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law.  See, e.g., DFSB Kollective Co. v. Tran, (N.D. Cal., Dec. 21, 2011).  The balance of the hardships tips in Plaintiff's favor.

### 4. Public Interest

"[T]he touchstone of the public interest factor is whether an injunction . . . strikes a workable balance between protecting the [holder's] rights and protecting the public from the injunction's adverse effects."  i4i Ltd., 598 F.3d at 863.  Here, granting a permanent injunction would protect Plaintiff's federally protected rights, which is in the public interest, and would have no adverse effect on the public.  See Amini, 768 F. Supp. 2d at 1057 ("allowing infringement of intellectual property discourages future innovation by failing to provide an adequate forum through which [persons] can protect their own ideas").

The Court finds that Plaintiff is entitled to injunctive relief.  The terms of the injunctive relief are stated below and in the Court's Judgment.

34

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Default Judgment.  The Court **DENIES** the Motion for Default Judgment as to Plaintiff's Cybersquatting claim under 15 U.S.C. § 1125(d).

The Court **GRANTS** the Motion for Default Judgment as to only the following claims:

(1) Trademark Infringement in violation of 15 U.S.C. §§ 1114(a) and 1125(a);

(2) Unfair Competition and False Designation of Origin in violation of 15 U.S.C. § 1125(a);

(3) Dilution of a Famous Mark in violation of 15 U.S.C. § 1125(c); and

(4) Patent Infringement of Plaintiff's design patents No. D599,999 and No. D616,189, in violation of 35 U.S.C. § 271;

and for the following relief:

1. Plaintiff is awarded statutory damages of two million dollars ($2,000,000) pursuant to 15 U.S.C. § 1117(c)(2), and post-judgment interest at the federal statutory rate pursuant to 28 U.S.C. § 1961;

2. Defendants are each permanently enjoined from: (a) importing, selling, marketing, offering for sale, or advertising in the United States any goods or materials bearing Plaintiff's UGG® Trademark, attached for reference as Exhibit A, any colorable imitation of the UGG® Trademark, or the mark "UGG";

(b) using Plaintiff's UGG® Trademark, or any reproduction, copy, counterfeit, or colorable imitation of the UGG® Trademark in the United States in connection with the promotion, advertisement, display, sale, offer for sale, manufacture, production, circulation, or distribution of any products with such design as to relate or connect, or tend to relate or connect, in any way to Deckers' UGG® brand of products;

(c)using any trademark that imitates or is confusingly similar to Plaintiff's UGG® Trademark;

(d) making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any product manufactured, distributed, or sold by Defendants is in any manner associated with, sponsored by, or connected with Plaintiff, or are sold, manufactured, licensed, sponsored, approved, or authorized by Plaintiff;

(e) using any mark likely to dilute, as defined by 15 U.S.C. § 1125(c), Plaintiff's famous UGG mark;

(f) importing, offering for sale, or selling any product not authorized by Plaintiff that is a reproduction, copy, or colorable imitation of the ornamental features of the design claimed in Plaintiff's U.S. Patent No. D599,999, attached for reference as Exhibit B, and/or the design claimed in Plaintiff's U.S. Patent No. D616,189, attached for

36

reference as Exhibit C, with the ornamental features including a vertical slit in the boot's material on the outward side of the upper portion of the boot with fur or fur-like material protruding from the slit and with the slit fastened together, or overlaid, by buttons hooked into a band that is attached to the material on the opposite side of the slit from where the buttons are attached to the material;

(g)using, linking to, exercising control over, operating, hosting, or otherwise owning any domain name or website, including, but not limited to, ozwearuggs.com and ozwearuggs.com.au, to engage in activity that violates the terms of this Order or that is involved with the distribution, advertising, offering for sale, or sale of any product that infringes on Deckers UGG® Trademark, U.S. Patent No. D599,999, and/or U.S. Patent No. D616,189; and

(h) effecting assignments or transfers, forming new entities or associations or utilizing any device for the purpose of circumventing or otherwise avoiding the prohibitions in this Order or aiding, abetting, contributing to, or otherwise assisting anyone from infringing upon Plaintiff's UGG® Trademark, U.S. Patent No. D599,999, and/or U.S. Patent No. D616,189;

3. Defendants are ordered to immediately, upon Notice of this Order, transfer to Plaintiff, at the address provided by Plaintiff, all footwear, products, goods, labels, signs, packages, wrappers, receptacles,

advertisements, and/or materials in Defendants' possession or control that bear the mark "UGG" or any simulation, reproduction, counterfeit, copy, or colorable imitation of Plaintiff's UGG® Trademark, as well as any footwear bearing the patented design of U.S. Patent No. D5999,999 or U.S. Patent No. D616,189.

The balance of Plaintiff's claims is dismissed, including Plaintiff's state-law claims and federal cybersquatting claim.  A Final Judgment will follow.

**IT IS SO ORDERED.**

DATED: September 18, 2014        RONALD S.W. LEW
_____

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge